Good morning. May I please the court, Suzelle Carrillo-Oreana, on behalf of Petitioner Robin Lee Sherwood. Can you pull those microphones closer to you? I just want to make sure they're here. Thank you. Mr. Sherwood had gone through five days of trial at the time that he entered an open plea to all of the charges against him. These charges included first degree murder and special circumstance felony murder. At that time, the evidence against him was not sufficient to actually convict him of those charges. Also, before he pled, the trial judge warned Mr. Sherwood that he would not show him any leniency in exchange for his open plea, and that he had a nickname of being called the Hammer. Despite that warning, Mr. Sherwood proceeded with his plea. Mr. Sherwood has presented sufficient evidence at the courts below to now merit an evidentiary hearing to show that the reason for his plea was that he was in fact incompetent to plead and because trial counsel was ineffective in failing to investigate his mental illness. And I'd like to begin with the ineffectiveness of counsel claim. In this case, there was plenty of evidence in the record that should have told counsel of a need for an investigation into Mr. Sherwood's mental health. Mr. Sherwood has consistently maintained that he told counsel that he was on psychotropic medications while in the care of the county jail. In addition, the types of charges that he was charged with required a finding of a requisite mental state where mental illness would have been a factor. In addition, at the time that he was represented by trial counsel, he was undergoing different situations at the county jail where he was placed on suicide watch because of attempts to kill himself, and he was also placed on psychotropic medication. All of these should have alerted trial counsel to the need to investigate Mr. Sherwood's mental health, but trial counsel failed to do so. And can I ask you about your first claim? Because it seems like there's an attempt to argue the mental illness, that the plea was invalid due to mental illness, but it was kind of originally couched in terms of coercion. And so if you could just help me understand whether or not there's any exhaustion question regarding that first claim. I know you have the second claim, and I have a number of questions to you regarding that, but I'm just trying to figure out procedurally, how do we analyze this first claim in light of how it has changed, and can we draw from the mental illness from the second claim as evidence of the invalid plea and how it was presented in the first claim? I hope that makes sense. Yes. So Mr. Sherwood presented a pro se claim that his plea was invalid based on a concern for his safety, that he believed that he was unsafe while he remained in the care of West Valley Detention Center's sheriff deputies from San Bernardino. But within the claim that raised ineffective assistance of counsel has always been this claim that he was incompetent to plead. The prejudice prong of the IAC claim requires that the court analyze whether or not Mr. Sherwood was actually incompetent to plead. So separate from his pro se claim that his plea was involuntary, within the claim of IAC there has always been this claim that he was in fact incompetent to stand trial. And it's an issue that comes up in both prongs of the IAC claim, because on the first hand there has to be a finding whether trial counsel was deficient in failing to investigate the mental health and then for the prejudice prong whether in fact he was incompetent. So you think the facts pertaining to that claim were raised in the state habeas petition in ground one, which was about that validity of the plea? Do you think that there was sufficient, I guess, presentation at that point regarding the mental illness? Right. So in the state claim, within the IAC claim, he has always maintained that he was suffering from mental illness and that he pled as a result of that mental illness within the IAC claim. Let me ask it in a different way. Do you know of any, I guess, authority that allows the court when determining exhaustion to look at the facts asserted in other parts of the petition, I guess, such as another claim in order to find that the petitioner fully and fairly presented all the relevant facts? So this court has considered that one claim encompasses another in several cases. One of them being Hayes v. Arave, which is 977 F2D 475. And then there's another case, Lonesbury v. Thompson, which is 374 F3D 785. And Wells v. Mays, 28 F3D 1005. In all of these cases, the petitioner had only raised one claim, but the court found that the claim was either sufficiently related or encompassed the other claim. Here, Mr. Sherwood was pro se, and so because of that, this court should liberally construe his pleadings. And that's another reason that this court should construe that his claim had been fairly raised in the court below. So let's talk about Mr. Belter, the trial counselor. Yes. And what he should have known then in terms of the mental health to have raised all the issues that you said he should have raised. What time and what's the best evidence that you have? And I know you have a lot, but I just was hoping to kind of get your best framing of that at this point in time. So as I indicated, Mr. Sherwood has, you know, stated in his verified petition that he told trial counsel that he was having mental health issues and that trial counsel failed to investigate them. Also, once Mr. Belter was appointed in October of 2004, Mr. Sherwood suffered a number of incidents at the county jail, including being placed on psychotropic medication and having a suicide attempt, which all occurred during the time that he was represented by trial counsel. In addition, trial counsel brought a motion to suppress the confession. And part of that motion to suppress was you had to really analyze what was Mr. Sherwood's mental state as part of that coercion analysis, which again required an investigation into Mr. Sherwood's mental state. In addition, the crime with which Mr. Sherwood was charged, there was evidence about Mr. Sherwood having a drug problem. There were priors that indicated a drug problem, all of which should have also indicated to trial counsel a need to investigate his mental health. So I guess you're asking for what relief here, an evidentiary hearing? I'm asking for a remand for an evidentiary hearing in district court, because Mr. Sherwood up until this point has not had the opportunity for discovery or for an evidentiary hearing to confront trial counsel or to present additional evidence than what he's been able to obtain on his own. Counsel, Judge Gould, if I could ask a question. Sure. Do you want an evidentiary hearing on deficiency or just on whether your client was competent to plead guilty at the time? On both, Your Honor. If we were to agree that because of your IAC claim, your client would be entitled to an evidentiary hearing on whether he was competent to plead guilty, why would you need the other claim? On whether we were hearing on whether he was competent alone as a stand-alone claim? If we, if we, if I could. If we, on your ground two, your second claim, found there may be sufficient basis to either grant relief or send it back for a remand, do we need to address count one? And what is the relief you're seeking for count one, and is it any different than what you're seeking for count two? At least that's my way of asking maybe a similar type of question. I think the relief that we're seeking would be to ultimately set aside Mr. Sherwood's plea because of. . . In count one? In count one. And how is that different from what you're seeking in count two? It's not. So the relief that you're seeking in count one is no greater than the relief you're seeking in count two? Correct. I'm calling it count two. Counsel, the question, if we decide to give you the remand for evidentiary hearing, the issue is whether he was competent when he made the plea. So if not, the state could still try him. Correct. Okay. Do you want to reserve the balance of your time? Yes, I will. Let me ask you a question before you do. I would estimate that in probably, and I don't want to overstate this, but I'd estimate probably in 75% of the cases that I have on the criminal docket back in Montana, that in reading the pre-sentence investigation report, I realize we've got a state court proceeding here, there is documented a history of some sort of mental illness. Ranges from drug addiction to ADD, ADHD, depression, anxiety, antisocial behavior, PTSD, bipolar, schizophrenia, you name it. In about 75% of those cases, is it your position that defense counsel in every one of these cases would have a duty to investigate the psychological problems to determine competency or face an ineffective assistance of counsel claim? In other words, where do we draw the line in a practical way? Certainly. In this case, the reason that in this case it was necessary is because it was brought to counsel's attention. But counsel's also charged with constructive knowledge, as I understand the law, as a duty. Correct. And in this case, the evidence was sufficient for him to have that burden to undergo that investigation. In some cases, there may not be, depending on the situation of the client, there's been cases where there's been prior competency findings or where counsel hasn't had to do an investigation later. But overall, if there is evidence in the record that suggests that a client does have mental health issues, it is counsel's duty to investigate the mental illness before deciding what avenue they're going to take for their investigation, as well as for the presentation of the defense. I'll reserve the rest of my time. Okay. Good morning, Your Honors. Deputy Attorney General Warren Williams on behalf of Appellee Stuart Sherman. Excuse me. Appellant has not presented any evidence that would show that he was incompetent at the time of his guilty plea. There's certainly evidence that would show that he had some mental illness such as depression and bipolar and was taking medications at certain times, but there's a large gap of information surrounding the one-and-a-half-year period around his guilty plea. With respect to the first claim that Appellant presents, our position is that that is unexhausted because both state courts and district court never had an opportunity to squarely analyze that claim. Admittedly, there is a related analysis within the IAC claim, but they are separate claims involving separate... At that point, wouldn't the court have had to have looked at everything and into Mr. Sherwood's condition at the jail, including the mental health? It was so closely linked and tied. So I'm trying to... That's why I asked some questions about that. So wouldn't that be what would happen? And so would that still make it unexhausted? I think that the same facts were looked at in the context of the IAC claim, but what happened with the first claim is that it was initially a duress claim with different facts, and then the IAC claim, as it was presented to state court and district court, was that the IAC was based on a failure to investigate his defense and other aspects of the representation, and then a minor part of it was a failure to investigate his mental illness. And now, admittedly, the same facts were looked into by the district court with respect to the IAC claim as we are now looking at on review. We'll add another layer to Judge Murguia's question, which is we're dealing here at this point in time with a pro se defendant, correct? That's correct. Right. You argue that the attorney below, I think it's Mr. Belter, did not have knowledge of Mr. Sherwood's mental illness and therefore his performance could not have been deficient, but I guess what are the cases that require an attorney to have actual knowledge of mental impairment before he has a duty to investigate? Isn't it sufficient? I thought we had case law that says that the information was readily available to Mr. Belter here. In fact, there's an additional claim here that the petitioner told him of his problems mentally. So I'm just trying to figure out what's the basis for your argument there. Well, if I could, my argument in the brief was more focused on the fact that there's no evidence to show that Mr. Belter was aware of an incompetency. Even if he were aware of the fact that Appellant was suffering from depression or bipolar, our position is that that wasn't sufficient to show that he could not comprehend the nature of the proceedings against him and also effectively assist in his defense. So even if there were evidences of suicide attempts and depression and counsel was aware, our position is that was not sufficient enough to show that there was a sincere doubt or a bona fide doubt of incompetence such that Appellant wouldn't understand the nature of the proceedings against him. And so, I mean, it sounds like Mr. I guess you don't dispute that Mr. Sherwood was suffering or at least claims that he had a wide variety and some serious mental challenges or illnesses. I mean, if you look at the list of everything, even just what's in the pre-sentence report. And it seems like we have case law, Evans v. Lewis and Douglas v. Woodford, that says even if, you know, if an attorney has done, it seems like it demonstrates an example of a case in which the attorney, if they'd done any investigation into the available records, he would have discovered evidence of the client's psychiatric problems. And in those cases, we found that the deficient performance where the documents were available to the attorney prior to the first sentencing hearing, that that was a problem and was able to get relief. I'm just trying to figure out why isn't that the same case here? So I assume you're saying that the presumption is that he was, the counsel, Mr. Belter was aware of all the documents and therefore we impute. Well, even if he was, it seems like the records would have been easily and readily available. And we have, I guess, decided in the past that that's enough. And it just shows that the lawyer, you know, is likely ineffective. If you have records that show such compelling information regarding the psychiatric condition of the petitioner and there was nothing done to even do the minimal review, especially in this case when he had reason to maybe know that there were problems. Well, part of the problem with this case is that there are so many pieces of evidence that simply aren't available to us. At this point in time. At this point in time. But they were available to counsel at the time, correct? In 2004 and 2005. There's some records from the jail. As I recall, the subsequent psychological evaluation that was done by, I can't remember the doctor's name, he had 200 pages of documents, I think, that were from the jail setting and other documents that he was able to look at, which led him to the conclusion that there was a question regarding Mr. Sherwood's competency. Well, there was certainly, admittedly, a large amount of documents that were in existence at the time. Right. Nonetheless, even if we were to assume there was some deficient performance based on that lack of investigation, appellant has been unable to demonstrate any actual incompetence such that the prejudice prong would be satisfied. You seem to be sort of cribbing this to the change of plea and saying there's no evidence that was presented at the time of the change of plea to indicate lack of competence. But doesn't that really sort of beg the question? I mean, if counsel had undertaken a psychological exam, had gotten a psychological exam for his client during that period of time, might it, I mean, isn't it entirely possible it would have revealed that there were some competency issues here? Based on the evidence that we have seen, it does not rise to a reasonable probability that the outcome would have been any different. Based on the evidence that you have seen surrounding that time frame of the change of plea? Well, the records of his medical records from 2004 to early 2005, then there's the gap around the time of the plea, and then subsequently the magistrate and judge and district court judge found that between 2008, 2010, there was some sort of incompetence. But that one-and-a-half-year period between doesn't demonstrate a reasonable probability that an appellant would have been found incompetent, such that he was unable to understand the nature of the proceedings against him. Even if there were evidences of depression or bipolar, it's such a high standard to show that he was incompetent, such that he didn't understand the proceedings. And there is a presumption of verity as to his own statements. And aside from that, the trial court itself never demonstrated any concern regarding appellant's competency. The prosecutor never raised any issues. But that's what's up. I mean, it sounds like, I mean, you probably know the facts here pretty well. Here he was in trial, and all of a sudden he decides he wants to plead to everything, including his prior strike. I mean, it seems to come out of the blue. I mean, during the middle of trial, it seems clear that he had this attack that, you know, seems to have affected him psychologically, the razor blade attack. And then at sentencing, or I think it was in October of 2006, Mr. Sherwood sent a letter to the judge indicating he never received a psychological evaluation and that he was CCCM, which is, you know, given the status or name given to inmates with psychiatric illness, that he was on medication, and that his case was a, he made a reference, I guess, to a death penalty case that was supposed to have a panel of attorneys. And the judge, I guess, directed that be sent to his lawyer. I understand his actual lawyer never got the federal, or I'm sorry, the public defender's office got it. Is that right? I'm sorry, Your Honor. The letter that he sent to the judge was the judge forwarded to his, to the public defender's office? I believe that is correct. Okay. And it was, it's not clear to me that Mr. Belter ever got it. But Mr. I'm just, you just said something about the judge never saw or indicated anything. But when you look at the history here, especially right before sentencing, not only did he send that letter, Mr. Sherwood sent a second letter to the judge requesting transcripts and again complaining of his trial counsel's deficiencies in answering questions and providing him with records. Apparently, the judge didn't receive that until after the second, after the second sentencing. But then the probation report reflected that Mr. Sherwood wanted the death penalty and then it detailed the history of Mr. Sherwood, which seems like it was rather, you know, a troubling one and included that he was taking medication for depression and that his attorney had made a reference to some 90-day psychological evaluation program at CRC. It seems like there were a number of indicators during this time period that would have reflected some mental illness. And then later, we get this letter and I wanted to get your take. I mean, not a letter, but evaluation from the psychologist or psychiatrist who evaluated him. Not, even though he interviewed him, he was reviewing all the information and reports at the time, at the relevant time period. So what are we to make of that? What's your position in light of all that evidence? I'll have to break this down into a few different points.  So why would he plead guilty in the middle of trial? He stated in the probation officer's report that he wanted to save his family from the remainder of the trial. And the prosecutor had not admitted all of the evidence that he appeared to be prepared to admit, which included the polygraph interview, which had substantially damning admissions and high-level thought processes about his conspiring to rob his former employer. Specifically with the quotation, he told his associate, if they have to shoot someone, make sure the other guy shoots him too. It's old school that when one person shoots, everyone has to shoot, which that was in 2004, right before the razor blade attack. That did predate the guilty plea by two years, but to answer your question about why would he plead guilty, he basically stated he did it to save his family from trial, and no plea bargain would have been forthcoming at that point in the trial anyway. And with respect to the probation report, I acknowledge that he made some misstatements regarding death penalty, but he also, in the same probation report, said he would more than likely get a life sentence and then subsequently pled guilty to save family from trial. At sentencing, he made another statement on the record saying, to the family, I do apologize to all of them. I pray for you guys every day. I pray for Alan, the murder victim, and I gave my life for it. I'm sorry. What about the medical records? I mean, it seems like that's the most compelling, or it seems to be very compelling evidence regarding his psychological state. And if the attorney had just looked at them, would have saw what later Dr. LeVid saw, which is, you know, from the West Valley Detention Center, it noted that prison records revealed diagnosis of schizoaffective disorder, depression with psychotic features, psychosis not otherwise specified, and he had been treated with psychotropic, antipsychotic antidepressant and stabilizing medications. He had a family history of mental illness and substance abuse, had been in a car accident that revealed a severe trauma to the head. You know, if his lawyer had just looked at those records, he would have found that. And it looks like we have case law that says that the lawyer, you know, should have at least done a minimum of investigating that. So I'm just trying to figure out, you know, what your best response is to that. Well, so the psychiatric report by Dr. LeVid took place seven years later, and he acknowledged that he did not have all of the records at the time, and he basically speculated that he would have been incompetent at the time. But he's doing it based on the records that were, which is different than some other cases, I mean, but I think, but tell me if I'm wrong, that Dr. LeVid was looking at records that were in existence at the time. He's not looking at records that were developed afterwards. He's looking at records that were in the jail. I believe it's the prison medical records indicating all this, and that seems to be a material difference from what I can tell. That wasn't my reading of the report, and I could be wrong, but my understanding was that Dr. LeVid admitted that there was no records between March 2005 and the guilty plea until September 2006. And I think it's important to also look at his first analysis, which was submitted to show that there was reason for the timeliness issue early on. And in that first report, Dr. LeVid admits that, or admitted that appellant's mental illness waxed and waned over a long period of time, and at the time that he actually performed the evaluation, he was not suffering from the same level of mental illness. So I think even from that statement alone, it's unclear how we could establish that appellant was not only mentally ill but incompetent at the time of his guilty plea. Okay. I don't know if anybody has any other questions. Judge Gould? I'm done here. Thank you. No, thank you. Thank you, Your Honors. Thank you, Mr. Williams. Counsel, I'm confused. Yes. What do you want us to do? You want us to remand for an evidentiary hearing on what issue or issues? I think you want us to remand for an evidentiary hearing on the ineffective assistance of counsel claim, correct? That's correct. But I also heard you say in response to Judge Gould's question, you want us to remand also for a competency hearing? Not for a competency hearing, but, again, as part of the IAC claim, the prejudice prong is whether there's reasonable doubt that he would have been found incompetent at the time of trial. So the two claims are related. So it's subsumed within the ineffective assistance of counsel claim? Correct. Okay. Thank you. That clarifies your request of relief. I would like to clarify the discussion about Dr. Labid's evaluation. Dr. Labid basically did two evaluations. He did an initial evaluation initially for the purposes of equitable tolling based on the late filing in Mr. Sherwood's federal petition, and then he did another evaluation specifically looking at the issue of the competency, his opinion of Mr. Sherwood's competency at the time of the plea. Now, for both of those evaluations, he looked at different records. In the equitable tolling evaluation, he looked at Mr. Sherwood's CDCR file, which started in 2007 through 2011. And then for the competency evaluation, he looked at what records were available from West Valley Detention Center at the time, as well as other medical records that were available, and his interview with Mr. Sherwood. And I guess I should note, because there were a lot of records, but some of them had been destroyed or were missing or something like that. Right. Can you tell me a little bit about that? So we requested the records from West Valley Detention Center with a signed release from our client, and in the record there is a letter of destruction that we received from West Valley that some of the records from Mr. Sherwood had been destroyed. In addition, when you look at the records, there's references to him being on psychotropic medication, but there's no related evaluations by a psychiatrist or a corresponding list of the doses of the medication that should have been part of the file at the time. So just because there aren't any records from the time period of his plea doesn't mean that there weren't at the time that he actually pled and the trial counsel was representing him. Does the record reflect that the documents that were later found missing would have been available to Attorney Belcher at the time? Yes. The destruction only happened subsequent to that date. All right. And the closest in time records that are available are two months after his plea when he's taken to Arrowhead Medical Center, and in those it's noted that he's suffering from depression and is prescribed two psychotropic medications, Welbutrin and Seroquel, which are antidepressants, which correspond with Mr. Sherwood's plea where he basically told the operation officer that he wanted to plea as a result of wanting the death penalty, which was not even on the table. And the records then that Mr. Belcher would have seen versus, I guess, I'm trying to figure out what Dr. LeVid saw. I mean, I guess there were missing records at the time he did his evaluation. Correct. And do you know what records those were or how extensive of the records were missing at that point in time? We do not know how extensive it was, no. Okay. Unless there are any more questions, I see I'm out of time. I don't know. None here, thank you. Okay. Thank you. Thank you very much. Thank you both for your arguments, Mr. Williams and Ms. Carillo-Oriana. I appreciate your presentations here. The case of Robin Lee Sherwood v. Stuart Sherman is submitted.
judges: Gould, Murguia, Christensen